IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RIMS BARBER, CAROL BURNETT, JOAN BAILEY,
KATHERINE ELIZABETH DAY, ANTHONY LAINE
BOYETTE, DON FORTENBERRY, SUSAN GLISSON,
DERRICK JOHNSON, DOROTHY C. TRIPLETT,
RENICK TAYLOR, BRANDIILYNE MANGUM-DEAR,
SUSAN MANGUM, and JOSHUA GENERATION
METROPOLITAN COMMUNITY CHURCH,

      **Plaintiffs,**

**v.**                          **Civil Action No. 3:16-cv-417-TSL-RHW**

PHIL BRYANT, GOVERNOR OF MISSISSIPPI;
JIM HOOD, ATTORNEY GENERAL OF MISSISSIPPI;
RICHARD BERRY, EXECUTIVE DIRECTOR OF THE
MISSISSIPPI DEPARTMENT OF HUMAN SERVICES;
and JUDY MOULDER, MISSISSIPPI STATE REGISTRAR
OF VITAL RECORDS,

      **Defendants.**

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

This lawsuit is a federal constitutional challenge to House Bill 1523 of the 2016

Session of the Mississippi Legislature.  With the passage and approval of that bill, the

Legislature and the Governor breached the separation of church and state, and

specifically endorsed and provided special protections for specific religious beliefs and

moral convictions that (1) condemn same-sex couples who get married, (2) condemn

unmarried people who have sexual relations, and (3) condemn transgender people.  H.B.

1523 was clearly enacted for religious purposes.  Specifically, the bill was enacted to

promote, endorse, and provide special protection for these particular beliefs and convictions.  H.B. 1523 also targets for disfavor and unequal treatment, and is the result of animus towards, the particular individuals and groups who are condemned by these beliefs and convictions.  There is no rational basis for the discriminatory treatment of those who are disfavored by the State through H.B. 1523, and no rational basis for exclusively endorsing and providing special protections for those people who subscribe to these beliefs and convictions.  Accordingly, H.B. 1523 violates the First and Fourteenth Amendments to the Constitution.

The individual plaintiffs in this case are citizens, residents, and taxpayers of the State of Mississippi.  The plaintiffs include ministers, community leaders, civic activists, and a Hattiesburg church.  They also include a married lesbian couple, a gay man who plans to marry his male partner this summer, an unmarried woman who is involved in a long-term romantic relationship with an unmarried man that includes sexual relations, a transgender woman, and a transgender man.  The plaintiffs – who have read the text of H.B. 1523 and followed the extensive media coverage of this controversial bill – disagree with the beliefs and convictions endorsed by the State through H.B. 1523 and are deeply offended by the State's endorsement and special protection of them.  The endorsement and special protection of these beliefs and convictions conveys a state-sponsored message of disapproval and hostility to those people who do not share these beliefs, including the plaintiffs and many other Mississippians, and indicates that their status is disfavored in the social and political community of their own home state.  The endorsement and special protection of these beliefs and convictions sends an especially hostile message to those

plaintiffs and other Mississippians whose relationships and identities are condemned by these beliefs and convictions.

Unless it is enjoined by this Court, the State's endorsement and special protection of these beliefs and convictions through H.B. 1523 will become the law of the plaintiffs' home state on July 1, 2016.   Thus, the harms faced by the plaintiffs and other Mississippians who do not share these beliefs and convictions is imminent.

## BACKGROUND

### *House Bill 1523*

The text of Section 2 of H.B. 1523 provides as follows:

The sincerely held religious beliefs or moral convictions protected by this act are the belief or conviction that:

> (a) Marriage is or should be recognized as the union of one man and one woman;
>
> (b) Sexual relations are properly reserved to such a marriage; and
>
> (c) Male (man) or female (woman) refer to an individual's immutable biological sex as objectively determined by anatomy and genetics at time of birth.

H.B. 1523, 2016 Leg. Reg. Sess., §2 (Miss. 2016).

H.B. 1523 provides a number of special protections exclusively for people and religious organizations who subscribe to the religious beliefs and moral convictions set forth in Section 2.   These protections include immunity from certain actions by the state government.   Without listing all of them, here are some examples:

Section 3(3) of the bill purports to prohibit the state government from taking action against a person who has been granted custody of a foster or adoptive child and who instructs or raises that child "consistent with a sincerely held religious belief or moral conviction described in Section 2 of this Act."  Presumably, this would mean that even if something about the particular circumstances of the raising of a particular foster or adoptive child in a particular home "consistent with" the beliefs and convictions endorsed by Section 2 was so harmful that action otherwise would be taken to remove the child, the state government would be prohibited from doing so.

Section 3(4) of the bill purports to prohibit (among other things) the state government from taking action against a person for declining to provide psychological or counseling services "based upon a sincerely held religious belief or moral conviction described in Section 2 of this act,"  and presumably would preclude the state government from requiring a psychologist or counselor paid with public funds to provide services to a transgender youth if the psychologist or counselor refuses to do so based upon the beliefs and convictions endorsed in Section 2(c) of the bill.

Section 3(6) of the bill purports to prohibit the state government from taking action against a person who "establishes sex-specific standards or policies concerning employees or student dress or grooming" based upon the beliefs and convictions endorsed in Section 2(c) of the bill.

Section 3(7) purports to give state employees special protection regarding their speech so long as that speech is "consistent with a sincerely held religious belief or moral conviction described in Section 2 of this act."

4

Section 3(8)(a) allows individual clerks, registers of deeds, and their deputies, all of whom are government employees, to refuse to issue marriage licenses to couples if they do so "based upon or in a manner consistent with a sincerely held religious belief or moral conviction described in Section 2 of this act" and if they take all necessary steps to ensure that the licensing of any legally valid marriage is not impeded or delayed by their recusal.  Section 3(8)(b) allows individual judges – even those who otherwise perform weddings for anyone who has a license – to refuse to perform weddings of couples "based upon or in a manner consistent with a sincerely held religious belief or moral conviction described in Section 2 of this act."  This section allows clerks and judges who hold either of the first two religious beliefs or moral convictions endorsed in Section 2 of the bill to refrain from facilitating marriages between same-sex couples and couples who have engaged in sexual relations before being married.  The statute may also extend to people who are divorced and wish to subsequently marry other people: a clerk or judge's strongly held religious belief or moral conviction that a marriage is "between one man and one woman" may regard any marriage as eternal, regardless of civil laws, making subsequent marriages bigamous.

Section 4(a)-(e) limits the State's ability to make decisions about taxes, benefits, and fines with respect to those people and religious organizations who subscribe to the beliefs and convictions endorsed in Section 2 and engage in the actions described in Section 3 of the bill.

Section 5 purports to give people who subscribe to the beliefs and convictions endorsed in Section 2 the right to raise those beliefs and convictions as a claim in the

courts for violations of the provisions of the bill, and to raise violations of the bill as a defense in any judicial or administrative proceeding.

Section 8(3) of the bill purports to prevent any agency or subdivision of the state government, presumably including any county or municipality, from adopting an ordinance, regulation, or policy that would be contrary to the provisions of the bill. Presumably, this means that a municipality which adopted an ordinance prohibiting businesses from discriminating against people based upon their sexual orientation would nevertheless be unable to enforce that ordinance against businesses that declined to provide marriage-related accommodations, facilities, goods, and services to same-sex couples based upon the religious beliefs and moral convictions endorsed in Section 2 of the bill.

To reiterate, the examples just listed are not an exhaustive catalogue of the provisions of House Bill 1523 or the special protections that it provides to the religious beliefs and moral convictions endorsed in Section 2 of the bill.

*The Plaintiffs*

The plaintiffs to this lawsuit are: (1) The Rev. Dr. Rims Barber, the director of the Mississippi Human Services Coalition and an ordained Presbyterian minister; (2) The Rev. Carol Burnett, an ordained Methodist minister; (3) Joan Bailey, a retired therapist with a practice largely devoted to lesbian women; (4) Katherine Elizabeth Day, a transgender woman who is an artist and activist; (5) Anthony ("Tony") Laine Boyette, a transgender man; (6) Rev. Don Fortenberry, an ordained Methodist minister and the retired Chaplain of Millsaps College; (7)  Dr.  Susan Glisson, the Senior Fellow on

6

Reconciliation and Founding Director of the William Winter Institute for Racial Reconciliation at the University of Mississippi, who is an unmarried woman in a long-term romantic relationship with an unmarried man that involves sexual relations; (8) Derrick Johnson, the Executive Director of the Mississippi State Conference of the NAACP; (9) Dorothy C. Triplett, a retired state and municipal government employee and a longtime community and political activist; (10) Renick Taylor, a political activist and a Field Engineer at CBIZ Network Solutions, who is a gay man engaged to be married to his male partner during the summer of 2016; (11) Brandiilyne Mangum-Dear, the Pastor at the Joshua Generation Metropolitan Community Church, who is a lesbian woman and has been married to her partner, Susan Mangum, since 2015; (12) Susan Mangum, the Director of Worship at the Joshua Generation Metropolitan Community Church, who is a lesbian woman and has been married to her partner, Brandiilyne Mangum-Dear, since 2015; and, (13) the Joshua Generation Metropolitan Community Church, an inclusive ministry that welcomes all people regardless of age, race, sexual orientation, gender identity, or social status and includes a number of members who are within the three groups that are targeted by Section 2 of H.B. 1523 – same-sex couples who are married or intend to marry, unmarried people engaged in relationships that include sexual relations, and transgender people.  Each of the individual plaintiffs is a citizen, resident, and taxpayer of the State of Mississippi.

Because of the public enactment by the Legislature and the Governor of H.B. 1523, including its endorsement of the religious beliefs and moral convictions set forth in H.B. 1523, each of the plaintiffs has been confronted with that endorsement.  Each of the

plaintiffs has read and become familiar with the text of H.B. 1523. Each has been exposed to the intense controversy surrounding the bill and has followed much of the extensive media coverage. Each is aware that, unless enjoined, H.B. 1523 will become the law of their home state of Mississippi on July 1, 2016.

The plaintiffs do not subscribe to any of the religious beliefs and moral convictions that are endorsed in Section 2 of H.B. 1523 and that are given special protection by H.B. 1523. The plaintiffs disagree with those beliefs and convictions and are offended by the State's endorsement and special protection of them. The endorsement and special protection of those beliefs and convictions conveys a state-sponsored message of disapproval and hostility to those who do not share those beliefs and convictions, including the plaintiffs and many other Mississippians, and indicates that their status is disfavored in the social and political community of their own home state. At the same time, the endorsement and special protection of those beliefs and convictions sends a message to Mississippians who do share those beliefs and convictions that they are favored members of the social and political community.

As mentioned previously, Plaintiff Renick Taylor is a gay man who is engaged to be married to his male partner, and Plaintiff Brandiilyne Mangum-Dear and Plaintiff Susan Mangum are a married lesbian couple. Their relationships and marriages are contrary to the State's endorsement in H.B. 1523 of the belief and conviction that "Marriage is or should be recognized as the union of one man and one woman." H.B. 1523, 2016 Leg. Reg. Sess., §2(a) (Miss. 2016). That endorsement and the special protection of that belief and conviction sends a state-sponsored message of disapproval

and hostility to these particular plaintiffs and to other gay and lesbian citizens of Mississippi, indicating that they are disfavored in the social and political community of their own home state.

As mentioned previously, Plaintiff Dr. Susan Glisson is an unmarried woman in a long-term romantic relationship with an unmarried man that includes sexual relations. This is contrary to the State's endorsement in H.B. 1523 of the belief and conviction that "Sexual relations are properly reserved to … a marriage [between one man and one woman]." H.B. 1523, 2016 Leg. Reg. Sess., §2(b) (Miss. 2016). That endorsement and the special protection of that belief and conviction sends a state-sponsored message of disapproval and hostility to Dr. Susan Glisson and other unmarried adult citizens of Mississippi who are involved in sexual relationships, indicating that they are disfavored in the social and political community of their own home state.

As mentioned previously, Plaintiff Katherine Elizabeth Day is a transgender woman and Plaintiff Tony Boyette is a transgender man. This is contrary to the State's endorsement in H.B. 1523 of the belief and conviction that "Male (man) or female (woman) refer to an individual's immutable biological sex as objectively determined by anatomy and genetics at the time of birth." H.B. 1523, 2016 Leg. Reg. Sess., §2(c) (Miss. 2016). That endorsement and the special protection of that belief and conviction sends a state-sponsored message of disapproval and hostility to Katherine Elizabeth Day, Tony Boyette, and other transgender citizens of Mississippi, indicating that they are disfavored in the social and political community of their own home state.

9

**ARGUMENT**

"The four elements a plaintiff must establish to secure a preliminary injunction

are:

> (1) Substantial likelihood of success on the merits, (2) a substantial threat
> of irreparable injury if the injunction is not issued; (3) that the threatened
> injury if the injunction is denied outweighs any harm that will result if the
> injunction is granted, and (4) that the grant of an injunction will not
> disserve the public interest."

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (citation omitted).  In this case, the

plaintiffs have established each element.

## I.     THE PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS.

Clearly, the plaintiffs have standing.  Among other things, they are citizens,

residents, and taxpayers in Mississippi who do not subscribe to the religious beliefs and

moral convictions that are endorsed in House Bill 1523, and who are offended by the

State's endorsement and special protection of those beliefs and convictions.  In at least

two of the crèche-menorah cases, the plaintiffs were described by the United States

Supreme Court simply as "residents" of the county and the city in which the religious

symbols were displayed.  *County of Allegheny v. ACLU,* 492 U.S. 573, 587-88 (1989);

*Lynch v. Donnelly,* 465 U.S. 668, 671 (1984).  In *Croft v. Governor of Texas,* 562 F.3d

735 (5th Cir. 2009), the Fifth Circuit addressed standing in an Establishment Clause

challenge to a moment of silence:

> The Crofts have alleged that their children are enrolled in Texas public
> schools and are required to observe the moment of silence daily. . . . The
> Crofts' children are definitely present for the moment of silence, and . . . we
> can assume that they or their parents have been offended—else they would

not be challenging the law. That is enough to establish standing at this [summary judgment] stage of the suit.

*Id.* at 746.

The fact that the plaintiffs here are challenging a religious endorsement expressed through a statute rather than through a symbolic, physical object like a crèche, an oral event like a prayer, or a moment of silence, does not matter for purposes of standing. In *Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012), the Tenth Circuit held that a Muslim plaintiff had standing to challenge an Oklahoma referendum to amend the state constitution to prohibit state courts from considering or using international law or Shariah law. In so doing, the Court noted that the "personal and unwelcome contact" the plaintiff had with the constitutional amendment was no different for standing purposes than the "personal and unwelcome contact" other plaintiffs had with government sponsored religious symbols. *Id.* at 1122.

> In some respects, Mr. Awad's alleged injuries are similar to those found sufficient to confer standing in our religious symbol Establishment Clause cases. Like the plaintiffs who challenged the highway crosses in *American Atheists [v. Davenport,* 637 F.3d 1095 (10th Cir. 2010)], Mr. Awad suffers a form of 'personal and unwelcome contact' with an amendment to the Oklahoma Constitution that would target his religion for disfavored treatment. As a Muslim and citizen of Oklahoma, Mr. Awad is 'directly affected by the law [ ] ... against which [his] complaints are directed.' *See Valley Forge [Christian College v. Americans United for Separation of Church and State*], 454 U.S. [464] at 487 n. 22 [(1982)] (*quoting, Abington Sch. Dist. v. Schempp,* 374 U.S. 203, 224 n. 9 (1963)). As further spelled out below, that is enough to confer standing. *See Schempp,* 374 U.S. at 224 n. 9.

*Awad*, 670 F.3d at 1122. In discussing further the plaintiff's standing in the case, the Tenth Circuit also noted that "Mr. Awad is facing the consequences of a statewide

election approving a constitutional measure that would disfavor his religion relative to others." *Id.* at 1123.

Like the plaintiffs in *Croft* enduring a moment of silence to which they were subjected, the plaintiffs here are required to endure an endorsement of religion in the law of their own state to which they object. And like the plaintiff in *Awad*, the plaintiffs here are "facing the consequences" of a statutory enactment "that would disfavor [their beliefs] relative to others." *Awad*, 670 F.3d at 1122. Just as standing was established in those cases, so it is here.[1]

In addition to the standing of the plaintiffs as people whose beliefs are disfavored because they do not subscribe to the state-endorsed beliefs and convictions set forth in H.B. 1523, Plaintiffs Taylor, Mangum-Dear, Mangum, Glisson, Day, and Boyette are among the groups who are targeted by the State's endorsement of the beliefs and convictions condemning same-sex couples who are married or plan to marry (Taylor, Mangum-Dear, and Mangum), who are unmarried and in relationships that include sexual relations (Glisson), and who are transgender (Day and Boyette). Moreover, Plaintiff Glisson has standing as a state employee who is not accorded the purported speech rights provided by Section 3(7) of the bill to those who subscribe to the beliefs and convictions endorsed by H.B. 1523.

There is a substantial likelihood that the plaintiffs will prevail on the merits. By setting forth in Section 2 three specific religious beliefs for which certain exclusive

---

[1] As just set forth, injury exists. Moreover, the injury clearly was caused by enactment of H.B. 1523, and the injury will be redressed if the statute is enjoined.

protections are provided, H.B. 1523 clearly "conveys a message of endorsement" of those beliefs. *Wallace v. Jaffree,* 472 U.S. 38, 57 n. 42 (1975) (quoting *Lynch v. Donnelly,* 465 U.S. at 690 (O'Connor, J., concurring)).   Moreover, the purpose of the bill is clearly to endorse and promote those specific religious beliefs.   Thus, the bill violates the Establishment Clause of the First Amendment.   *Wallace,* 472 U.S. at 57; *Lemon v. Kurtzman,* 403 U.S. 602, 612-13 (1971).

In *Awad v. Ziriax*, 670 F.3d at 1126-1129, the Tenth Circuit affirmed the grant of a preliminary injunction and noted that the plaintiff was likely to prevail on the merits in his Establishment Clause challenge to the Oklahoma constitutional referendum to prohibit state courts from considering international law or Shariah law.   The Tenth Circuit examined the merits under the analysis employed by the Supreme Court for "explicit and deliberate distinctions between different religious organizations." *Larson v. Valente*, 456 U.S. 228, 247 n. 23 (1982).   Such a law is constitutional only if it is "closely fitted to the furtherance of any compelling interested asserted." *Id.* at 255.   The Tenth Circuit held that the proposed Oklahoma constitutional amendment was not justified by any compelling state interest (and also that all of the other preliminary injunction factors favored the plaintiff).   670 F.3d at 1129-1132.

While the present case does not involve what *Larson* calls an "explicit and deliberate distinction[] between different religious organizations," it does involve an explicit and deliberate distinction between different religious *beliefs*.   There certainly is no compelling interest, or indeed any legitimate interest, that justifies this distinction.   At any rate, whether the analysis in this case is more appropriate under *Larson* or under

13

*Lemon* and subsequent cases, the result is the same: H.B. 1523 violates the Establishment Clause.

Beyond the First Amendment violation, H.B. 1523 also violates the Fourteenth Amendment's Equal Protection Clause.  The bill specifically targets and disfavors those who do not subscribe to the beliefs and convictions endorsed in Section 2 of the bill. Further, by endorsing those beliefs and convictions, the bill targets and disfavors same-sex couples who are married or plan to marry, people who are unmarried and in relationships that include sexual relations, and transgender people.  By its very language and its endorsement, the bill reflects an animus toward those who are disfavored. Moreover, there is not even a rational basis to justify the distinctions that are drawn in the bill, *see Romer v. Evans,* 517 U.S. 620, 632 (1997), much less the higher scrutiny that is appropriate in light of this targeting.

H.B. 1523 cannot be justified as a necessary means of accommodating religion.  In 2014, the State of Mississippi enacted the Mississippi Religious Freedom Restoration Act (MS RFRA), Miss. Code Ann. § 11-61-1.  To the extent government accommodation is required for the religious beliefs that are endorsed and given special protection by Section 2 of H.B. 1523, those beliefs were already sufficiently protected by MS RFRA in a manner which did not specifically endorse and give special status and exclusive protection to certain particular religious beliefs.  There has been no indication that the MS RFRA was somehow insufficient to protect legitimate free exercise concerns.  The passage of H.B. 1523 in the absence of any indication that it was necessary to protect the

free exercise of religion demonstrates that the bill was passed for improper and unconstitutional reasons.

## II.    ABSENT AN INJUNCTION, THE PLAINTIFFS WILL SUFFER IRREPARABLE HARM.

"It is well settled that the loss of First Amendment freedoms even for minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir. Unit B 1981) (citing *Elrod v. Burns,* 427 U.S. 347, 373 (1976)).  *See also CSE v. Bryant I,* 64 F.Supp.3d 906, 950 (S.D. Miss. 2015) (citation omitted) ("[I]t is well-established that the deprivation 'of constitutional rights constitutes irreparable harm as a matter of law.'").  As explained in the discussion of standing above, H.B. 1523 clearly violates the constitutional rights of the plaintiffs and causes them harm.  Among other things, H.B. 1523 conveys an impermissible, state-sponsored message of disapproval and hostility to those who do not share the beliefs and convictions endorsed in Section 2, and to those who are condemned as part of those beliefs, and indicates that their status is disfavored in the social and political community of their own home state.  *See, e.g., CSE v. MDHS,* 2016 WL 1306202, *14 (S.D. Miss. March 31, 2016) (finding irreparable harm from "stigmatic and more practical injuries").  *See also Catholic League for Religious and Civil Rights v. City and County of San Francisco*, 624 F.3d 1043, 1053 (9th Cir. 2010) (holding that the plaintiffs had sufficiently pleaded injury in their Establishment Clause challenge to a city resolution that "conveys a government message of disapproval and hostility toward their religious beliefs" and "'sends a clear message' 'that they are

15

outsiders, not full members of the political community'"). Unless it is enjoined by this Court, H.B. 1523's endorsement and special protection of the narrow religious beliefs and moral convictions set forth in Section 2 of the bill will become the law on July 1, 2016. The harms faced by the plaintiffs and other Mississippians who do not share those favored religious beliefs and moral convictions, and those plaintiffs and other Mississippians whose relationships and identities are condemned by those beliefs and convictions, is imminent and irreparable.

## III.   THE BALANCE OF HARMS WEIGHS IN FAVOR OF AN INJUNCTION.

No irreparable harm will result from a preliminary injunction to preserve the status quo. It has been nearly a year since the Supreme Court's decision in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015), and the State seems to have survived just fine. To the extent any free exercise problems arise, the Mississippi RFRA law remains in place. In short, there is no indication that irreparable harm will result from maintaining the status quo. Moreover, as the Tenth Circuit said when upholding a preliminary injunction against a comparable law: "when the law that voters wish to enact is likely unconstitutional, their interests do not outweigh [the plaintiff's] in having his constitutional rights protected." *Awad,* 670 F.3d at 1131.

## IV.   THE PUBLIC INTEREST FAVORS AN INJUNCTION

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Awad*, 670 F.3d at 1132. *See also, CSE v. Bryant I*, 64 F. Supp. 3d at 951 (same). Further, H.B. 1523 is a divisive and controversial statute that has led to

economic boycotts of the State.  Enjoining it and maintaining the pre-H.B. 1523 status quo will be in the public interest pending a final decision in this case.

## CONCLUSION

For the foregoing reasons, and on the basis of the authorities cited, the motion for a preliminary injunction should be granted.


June 3, 2016                                    Respectfully submitted,

                                                s/Robert B. McDuff
                                                ROBERT B. MCDUFF, MSB # 2532
                                                SIBYL C. BYRD, MSB # 100601
                                                JACOB W. HOWARD, MSB #103256
                                                MCDUFF & BYRD
                                                767 North Congress Street
                                                Jackson, MS 39202
                                                (601) 259-8484
                                                rbm@mcdufflaw.com
                                                scb@mcdufflaw.com
                                                jake@mcdufflaw.com

                                                BETH L. ORLANSKY, MSB # 3938
                                                JOHN JOPLING, MSB # 3316
                                                CHARLES O. LEE, MSB #99416
                                                MISSISSIPPI CENTER FOR JUSTICE
                                                P.O. Box 1023
                                                Jackson, MS 39205-1023
                                                (601) 352-2269
                                                borlansky@mscenterforjustice.org

                                                *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system, which sent notification to all counsel who have entered their appearance in this matter.

I further certify that I have deposited copies of the foregoing pleadings with the United States Postal Service for delivery to the following:

Governor Phil Bryant
c/o Office of the Attorney General
Walter Sillers Building, Suite 1200
550 High Street
Jackson, MS 39201

Attorney General Jim Hood
Walter Sillers Building, Suite 1200
550 High Street
Jackson, MS 39201

Richard Berry, Executive Director of Miss. DHS
c/o Office of the Attorney General
Walter Sillers Building, Suite 1200
550 High Street
Jackson, MS 39201

Judy Moulder, Registrar of Vital Records
c/o Office of the Attorney General
Walter Sillers Building, Suite 1200
550 High Street
Jackson, MS 39201

This the 3rd day of June, 2016

s/ Robert B. McDuff
ROBERT B. MCDUFF