IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**RIMS BARBER, CAROL BURNETT, JOAN BAILEY,
KATHERINE ELIZABETH DAY, ANTHONY LAINE
BOYETTE, DON FORTENBERRY, SUSAN GLISSON,
DERRICK JOHNSON, DOROTHY C. TRIPLETT,
RENICK TAYLOR, BRANDIILYNE MANGUM-DEAR,
SUSAN MANGUM, and JOSHUA GENERATION
METROPOLITAN COMMUNITY CHURCH,**

    Plaintiffs,

v.                                       Civil Action No. 3:16-cv-417-CWR-LRA

**PHIL BRYANT, GOVERNOR OF MISSISSIPPI;
JIM HOOD, ATTORNEY GENERAL OF MISSISSIPPI;
JOHN DAVIS, EXECUTIVE DIRECTOR OF THE
MISSISSIPPI DEPARTMENT OF HUMAN SERVICES;
and JUDY MOULDER, MISSISSIPPI STATE REGISTRAR
OF VITAL RECORDS,**

    Defendants.

## REPLY BRIEF IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

This reply is submitted in support of the motion for a preliminary injunction to enjoin enforcement of House Bill 1523 of the 2016 Session of the Mississippi Legislature.

**I.    THE PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS.**

*Standing Regarding the Establishment Clause*

The Plaintiffs include twelve individuals – all residents, citizens, and taxpayers of Mississippi – and one Mississippi church. None of the Plaintiffs subscribe to the religious beliefs and moral convictions endorsed by their State's government in H.B. 1523. Instead, the Plaintiffs disagree with those beliefs and convictions and are offended by them.

Because they do not agree with those beliefs, the Plaintiffs do not receive the special legal protection bestowed upon those who hold the beliefs. The Plaintiffs include members of all three of the groups that are the subject of disapproval by those who hold the beliefs and convictions endorsed by the State in H.B. 1523: (1) same-sex couples who are or plan to be married, (2) unmarried people who have sexual relations, (3) transgender people. The Plaintiffs include one state employee who does not receive the legal protection accorded to state employees who hold those beliefs. Moreover, the Plaintiffs include four ministers, a church worker, and a church who do not receive the legal protection accorded to ministers, church workers, and churches who share those beliefs. If these plaintiffs do not have standing to challenge H.B. 1523 pre-enforcement, it is unclear who does.

While acknowledging that non-economic injuries can be sufficient to confer standing, the Defendants rely on the phrase, often quoted out of context, from *Valley Forge Christian College v. Americans United for Separation of Church & State* that "the psychological consequence presumably produced by observation of conduct with which one disagrees" is not, by itself, sufficient to confer standing. 454 U.S. 464, 485 (1982). Doc. 30 at 11. But the Defendants fail to point out the context in which that statement was made. As the Supreme Court stated in that case:

> We simply cannot see that respondents have alleged an *injury* of *any* kind, economic or otherwise, sufficient to confer standing. Respondents complain of a transfer of property located in Chester County, Pa. The named plaintiffs reside in Maryland and Virginia; their organizational headquarters are located in Washington, D.C. They learned of the transfer through a news release. Their claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court.

454 U.S. at 486-487 (footnotes omitted, emphasis in original).

By contrast, the Plaintiffs here are Mississippi citizens challenging a Mississippi statute on the ground that, through that statute, their State government publicly endorses certain religious beliefs and moral convictions which they do not share, provides legal protections to those who subscribe to those views but not to those who don't, and disfavors and condemns certain groups to which some of the Plaintiffs belong. In our amended memorandum, doc 14 at 11-12, where we pointed out that the crèche-menorah cases were brought by residents of the towns where they were displayed, we quoted *Croft v. Governor of Texas,* 562 F.3d 735, 746 (5th Cir. 2009) to the effect that parents whose children observe a state-imposed moment of silence and are "offended" by it have standing to challenge it. Further, we argued that citizens who observe their State's endorsement in a statute of a religious belief which offends them have just as much standing as those who observe a crèche or a moment of silence.

The Defendants never respond to *Croft* or its holding that being "offended" by an endorsement which a plaintiff observes in her own school district is sufficient to grant standing. And while they argue that the "state-sponsored religious symbol" cases "are inapposite," doc. 30 at 13, that is simply not correct. If a statute was passed endorsing the Christian faith as the official religion of a particular state, surely a non-Christian resident of that state who was offended by that endorsement could challenge it just as he could challenge a crèche or a cross erected by the local government in his community. And if a state enacted a statute endorsing the Ten Commandments, surely a citizen who was offended by that endorsement could bring a challenge just as she could if the

Commandments were on the wall of her child's classroom. *See, Stone v. Graham,* 449 U.S. 39, 42 (1980). Indeed, the language of the Establishment Clause reads: "Congress shall make *no law* respecting an establishment of religion." (Emphasis added.) Given the incorporation of the First Amendment and its application to the states through the Fourteenth Amendment, the passage of a state *law* endorsing certain religious beliefs raises constitutional concerns as much as a state-sponsored religious symbol, and standing requirements should be no more strict when challenging a law than they are when a symbol, a placard, a prayer, or a moment of silence is at issue.

Nevertheless, the Defendants attempt to distinguish *Awad v. Ziriax,* 670 F.3d 1111 (10th Cir. 2012), by pointing out that in addition to analogizing the "personal and unwelcome contact" the plaintiff had with the constitutional amendment to the contact plaintiffs in other cases had with religious symbols, the Tenth Circuit mentioned that the plaintiff alleged he could not probate his will. Doc. 30 at 12, *citing* 670 F.3d at 1120. But that additional allegation by the *Awad* plaintiff does not undermine the analogy. Moreover, the Plaintiffs in the present case are disfavored by the creation of legal protections exclusively for those who subscribed to the endorsed beliefs, and therefore H.B. 1523 disfavors their religious beliefs just as the Oklahoma constitutional amendment "would disfavor [Mr. Awad's] religion relative to others." 670 F.3d at 1123. And while Defendants here claim that *Awad* "represents the outer edge of Establishment Clause standing doctrine," doc. 30 at 11, it actually seems to be right in the center given that it applies the standing analysis in the symbol cases to the core of the Establishment Clause

language that government "shall make *no law*" endorsing religion. At any rate, whether on the outer edge or in the middle, the reasoning of the *Awad* case applies here.[1]

The Defendants quote *In Re Navy Chaplaincy* for the proposition that the religious display and prayer cases should not be extended so that "anyone who becomes aware of a government action that allegedly violates the Establishment Clause [can] sue over it on the ground that they are offended by the allegedly unconstitutional 'message' communicated by that action." Doc. 30 at 14, *quoting,* 534 F.3d 756, 764-765 (D.C. Cir. 2008). But the Plaintiffs are not just "anyone who becomes aware of government action that allegedly violates the Establishment Clause." They are Mississippians suing over a Mississippi law that endorses religious beliefs that they do not share and that creates special legal protections only for those who share the beliefs.

The Ninth Circuit explained it well in *Catholic League for Religious and Civil Rights v. City and County of San Francisco,* 624 F.3d 1043 (9th Cir. 2010) (en banc). There the Court analogized the plaintiffs in the Supreme Court's *Valley Forge* case to "Protestants in Pasadena suing San Francisco over its anti-Catholic resolution." *Id.* at 1052. The Ninth Circuit went on to say:

---

[1] The Defendants claim that the Tenth Circuit "retrenched somewhat" from the *Awad* decision in *COPE v. Kansas State Bd. of Educ.,* --- F.3d ---, 2016 WL 1569621 (10th Cir. Apr. 19, 2016). But a review of the *COPE* decision makes it clear that while the Court properly distinguished *COPE* from *Awad,* there was no retrenchment from *Awad's* holding and reasoning. In *COPE*, plaintiffs alleged that optional science curriculum guidelines improperly discriminated against religion by advocating the teaching of scientific explanations for the origin of life. 2016 WL 1569621 at *2. The Tenth Circuit held that the guidelines did not "intend to promote a non-religious worldview," both because they were silent with respect to religion and because school districts were permitted to "delve deeper into the limitations of the scientific method or to teach alternative origins theories." *Id.* at *3. Here, by contrast, HB 1523 expressly promotes specific religious beliefs and provides absolute protections to people who hold those beliefs.

> One has to read the whole Valley Forge sentence quoted, and not stop at 'psychological consequence,' to understand it. A 'psychological consequence' does not suffice as concrete harm where it is produced merely by 'observation of conduct with which one disagrees.' But it does constitute concrete harm where the 'psychological consequence' is produced by government condemnation of one's own religion or endorsement of another's in one's own community. For example, in the school prayer and football game cases, nothing bad happened to the students except a psychological feeling of being excluded. Likewise in the crèche and Ten Commandments cases, nothing happened to the non-Christians, or to people who disagreed with the Ten Commandments or their religious basis, except psychological consequences. What distinguishes the cases is that in Valley Forge, the psychological consequence was merely disagreement with the government, but in the others, for which the Court identified a sufficiently concrete injury, the psychological consequence was exclusion or denigration on a religious basis within the political community.

*Id.*

The Ninth Circuit's analysis is consistent with the Supreme Court's explanation of the Establishment Clause injury that flowed from school-sponsored religious speech in *Santa Fe Independent School Dist. v. Doe*:

> School sponsorship of a religious message is impermissible because it sends the ancillary message to members of the audience who are nonadherents 'that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community.' *Lynch [v. Donnelly]*, 465 U.S. [666], at 688 [(1984)] (O'CONNOR, J., concurring).

530 U.S. 290, 309-310 (2000). The same is true for a statute, in which the "audience" for the ancillary message are not those attending a football game, but the residents of the state who are governed by the statute.

As mentioned in our memorandum supporting the motion, doc. 14 at 13 n. 2, the Governor and the legislature caused these injuries by enacting and signing H.B. 1523. The Defendants' responsibilities with respect to the statute are outlined in the complaint, and

6

clearly a favorable decision will redress the injury by enjoining the statute. Although the Defendants attempt to address these factors in their brief, doc. 30 at 23-24, they provide no coherent explanation to the contrary. Clearly the Plaintiffs have standing here.

*Standing Regarding the Equal Protection Clause*

The Defendants claim that "none of the Plaintiffs allege that they have been denied anything as a result of H.B. 1523." Doc. 30 at 16. But what they claim is the right to equal treatment. As the Supreme Court made clear in *Heckler v. Matthews*, when discussing standing to bring an equal protection claim, a plaintiff is not required to demonstrate that he was denied some pre-existing benefit. Instead, as the Court said:

> [T]he right to equal treatment guaranteed by the Constitution is not co-extensive with any substantive rights to the benefits denied the party discriminated against. Rather, as we have repeatedly emphasized, discrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, *Mississippi University for Women v. Hogan*, 458 U.S. 718, 725 (1982), can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group. Accordingly, as Justice Brandeis explained, when the 'right invoked is that of equal treatment,' the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class. *Iowa-Des Moines National Bank v. Bennett*, 284 U.S. 239, 247 (1931).

*Heckler v. Matthews,* 465 U.S. 728, 739-740 (1984) (footnotes omitted). Contrary to the contention of the Defendants, these are not speculative "injuries . . . tied to the hypothetical future actions of unknown person," doc. 30 at 17, but instead are part of the designation of disfavored groups and the unequal treatment built into H.B. 1523 that will take effect if it is not enjoined.

7

*Heckler's* equal protection language about "stigmatizing members of the disfavored group" as "less worthy participants in the political community" mirrors the language (quoted earlier) about the injury stemming from Establishment Clause violations contained in *Santa Fe Independent School Dist. v. Doe*: "School sponsorship of a religious message is impermissible because it sends the ancillary message to members of the audience who are nonadherents 'that they are outsiders, not full members of the political community.'" 530 U.S. at 309-310, *quoting Lynch*, 465 U.S., at 688 (O'Connor, J., concurring). Thus, the factors that confer Establishment Clause standing on the Plaintiffs also confer it for purposes of the Equal Protection Clause.

Nevertheless, according to the Defendants, the Plaintiffs are not the "objects" of H.B. 1523, and therefore have no standing. Doc. 30 at 18. But the terminology about "objects" comes from *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561-562 (1992), and the Court made it clear in that discussion that it was talking about causation and redressability. As noted at the end of the discussion earlier in this brief about Establishment Clause standing, causation and redressability are clearly present here.

Beyond that, the Defendants' contention seems to be that because H.B. 1523 provides certain protections to those who subscribe to the endorsed beliefs, those people are the only "objects" of the law and the only ones with standing. But that is like saying that men are the only objects of a law providing benefits exclusively to men, and therefore women cannot challenge it. Of course they can, and of course the Plaintiffs can challenge H.B. 1523 here.

*The Establishment Clause Merits*

According to the Defendants, H.B. 1523 is an accommodation of religion and of freedom of conscience, and therefore has a secular purpose. But as the Supreme Court explained in *McCreary County, Kentucky v. ACLU of Kentucky,* 545 U.S. 844 (2005):

> *Lemon* said that government action must have 'a secular ... purpose,' 403 U.S., at 612, and after a host of cases it is fair to add that although a legislature's stated reasons will generally get deference, the secular purpose required has to be genuine, not a sham, and *not merely secondary to a religious objective*.

*Id.* at 864 (emphasis added). The Court in *McCreary County* specifically noted that in the Supreme Court's earlier decision in *Wallace v. Jaffree*, "the Court declined to credit Alabama's stated secular rationale of 'accommodation' for legislation authorizing a period of silence in school for meditation or voluntary prayer, given the implausibility of that explanation in light of another statute already accommodating children wishing to pray." 545 U.S. at 864, *citing Wallace,* 472 U.S. at 57 n.45.

Similarly, the claim of a secular motive in "accommodat[ing]" religion is implausible given that Mississippi had already passed in 2014 its own Mississippi Religious Freedom Restoration Act (Miss. Code Ann. § 11-61-1) which is specifically designed to accommodate religious beliefs. The Mississippi RFRA, like other RFRA's around the country, does not endorse specific religious beliefs, but instead applies to all "exercise[s] of religion." By contrast, H.B. 1523 singles out only certain specific religious beliefs, which suggests that the purpose of passing 1523 was to endorse those three, specific beliefs and that any purpose of accommodation was at most (in the words of *McCreary County*) "merely secondary to a religious objective."

Indeed, while a large number of RFRAs and related statutes purporting to provide accommodation for religious beliefs have been passed around the country since the 1990s, H.B. 1523 is *the only one* whose text sets forth specific religious beliefs that it endorses and for which it provides special legal protection. Most, like Mississippi's earlier 2014 RFRA, require that any burden on a person's exercise of religion be justified by a compelling governmental interest and be the least restrictive means of furthering that interest. *See* Miss. Code Ann. § 11-61-1(5). Some statutes are more particularized. For example, a small number of recent enactments provide that ministers and churches may not be required to solemnize marriages and provide related services that violate their sincerely held religious beliefs. *See* Laws of Florida, Chapter 2016-50 (approved by the Governor 3/10/16; to take effect as Fl. Stat. § 761.061 on 7/1/16), *available at* http://laws.flrules.org/2016/50; N.C. Stat. § 51-5.5; UT ST §§ 63-20-201, 63-20-301. But none of the texts of those statutes, or any others, identify any *specific* religious beliefs in the manner that H.B. 1523 does.[2]

The Defendants cite the so-called "Church Amendment" regarding recipients of federal health care funds, but it is important to note that this particular federal statute

---

[2] The RFRA and related statutes in the various states as of the present date include the following: Ala. Const. Art. I, §3.01; Ariz. Rev. Stat. §41-1493.01; Ark. Code § 16-123-401 *et seq.*; Conn. Gen. Stat. §52-571b; Fla. Stat. §761.01, *et seq.*; Fla. Stat. § 761.061 (effective 7/1/16); Idaho Code §73-402; Ill. Rev. Stat. Ch. 775, §35/1, *et seq.*; Ind. Code Ann. § 34-13-9-0.7, *et seq.*; Kan. Stat. §60-5301, *et seq.*; Ky. Rev. Stat. §446.350; La. Rev. Stat. §13:5231, *et seq.*; Miss. Code §11-61-1; Mich. Comp. Laws §§ 722.124e, 722.124f, 710.23g, 400.5a; Mo. Rev. Stat. §1.302; N.M. Stat. §28-22-1, *et seq.*; N.C. Stat. § 51-5.5; Okla. Stat. tit. 51, §251, *et seq.*; Pa. Stat. tit. 71, §2403; R.I. Gen. Laws §42-80.1-1, *et seq.*; S.C. Code §1-32-10, *et seq.*; Tenn. Code §4-1-407; 2015 Tenn. S.B. 1556 (Adopted April 27, 2016); Tex. Civ. Prac. & Remedies Code §110.001, *et seq.*; UT ST § 63-20-101 *et seq.;* Va. Code §57-2.02.

protects both people who decline to participate in abortions and those who choose to participate. In particular, 42 U.S.C. § 300-7( c) (1) provides:

> (1) No entity which receives a grant, contract, loan, or loan guarantee under the Public Health Service Act (42 U.S.C. 201 et seq.), the Community Mental Health Centers Act (42 U.S.C. 2689 et seq.), or the Developmental Disabilities Services and Facilities Construction Act (42 U.S.C. 6000 et seq.) after June 18, 1973, may –
>
> (A) discriminate in the employment, promotion, or termination of employment of any physician or other health care personnel, or
>
> (B) discriminate in the extension of staff or other privileges to any physician or other health care personnel, because he performed or assisted in the performance of a lawful sterilization procedure or abortion, because he refused to perform or assist in the performance of such a procedure or abortion on the grounds that his performance or assistance in the performance of the procedure or abortion would be contrary to his religious beliefs or moral convictions, or because of his religious beliefs or moral convictions respecting sterilization procedures or abortions.

By contrast, H.B. 1523 plays favorites, endorsing and providing protection for only those people who hold the preferred religious beliefs.

The alleged secular purpose of H.B. 1523 is akin to the alleged secular purpose of "fairness" put forward in *Edwards v. Aguilard,* 482 U.S. 578 (1987) in an effort to justify Louisiana's bill requiring the teaching of "creation science." As the Supreme Court explained, "the goal of basic 'fairness' is hardly furthered by the Act's discriminatory preference for the teaching of creation science and against the teaching of evolution," given that "[t]he Act forbids school boards to discriminate against anyone who 'chooses to be a creation-scientist' or to teach 'creationism,' but fails to protect those who choose to teach

evolution or any other non-creation science theory, or who refuse to teach creation science." *Id.* at 588.

Thus, H.B. 1523 is extreme and unusual both in the specificity of the three religious beliefs and moral convictions that it endorses and also in the biased manner in which it provides special legal protections only for those who adhere to those beliefs. This demonstrates that it is not a justifiable secular accommodation at all, but is, at best, "secondary to a religious objective." *McCreary County,* 545 U.S. at 864. These circumstances, as well as the text of the statute and the legislative debate excerpts included in the Plaintiffs' pleadings in *C.S.E. v. Bryant,* No. 3:16cv442-CRW-LRA (which is being consolidated with the present case for purposes of the preliminary injunction hearing), clearly demonstrate that "the government's actual purpose is to endorse . . . religion." *Wallace v. Jaffree,* 472 U.S. 38, 57 n. 41 (1975) (*quoting, Lynch v. Donnelly,* 465 U.S. at 690 (O'Connor, J., concurring)).

As the Fifth Circuit has stated, "Government unconstitutionally endorses religion whenever it appears to 'take a position on questions of religious belief,' or makes 'adherence to a religion relevant in any way to a person's standing in the political community,'" *Ingebretsen v. Jackson Public School District,* 88 F.3d 274, 280 (5th Cir. 1996) (citations omitted). Clearly the State has done so through H.B. 1523. And whether this was the "government's actual purpose," or whether the bill in effect "conveys a message of endorsement," *Wallace,* 472 U.S. at 57 n. 41 (*quoting,* 465 U.S. at 690 (O'Connor, J., concurring)), or both, the statute is invalid.

*The Equal Protection Clause Merits*

Part of the Defendants' response regarding the Equal Protection claim is that H.B. 1523 is not as comprehensive as the Colorado amendment struck down in *Romer v. Evans,* 517 U.S. 620 (1997). Doc. 30 at 36, 40-41. Be that as it may, *Romer* is controlling in three ways. First, it demonstrates that the different treatment imposed upon different groups in H.B. 1523 is irrational (and certainly does not meet the heightened scrutiny that should be imposed). Second, it demonstrates that treatment is born of animus. Third, although H.B. 1523 is not as comprehensive as the Colorado amendment, it nevertheless "imposes a special disability" upon the disfavored groups and "forbids the safeguards that others enjoy and may seek without constraint." 517 U.S. at 631.

The Defendants argue that the bill has a rational relationship to a legitimate governmental objective of protecting the "right of citizens to hold the religious beliefs and moral convictions identified in Section 2 of the law." But there is no threat to the right of citizens to hold those beliefs. Moreover, as explained earlier in this brief, the Mississippi RFRA already protects citizens against burdens on their religious beliefs imposed by the state government. The First Amendment and Mississippi's Constitution also protect the rights of religious expression and freedom of conscience of all people. H.B. 1523 goes far beyond those protections – and far beyond any other state statute – by providing certain exclusive legal privileges only to those who share the State's endorsed beliefs, by denying them to those who don't, and by targeting the three groups who are disfavored by those who subscribe to the endorsed beliefs. There is no rational basis for these distinctions. *See, City of Cleburne, Texas v. Cleburne Living Center, Inc.,* 473 U.S. 432, 448 (1985)

("mere negative attitudes . . . are not permissible bases for treating a home differently from apartment houses, multiple dwellings, and the like.").

The Defendants also contend there is no evidence that H.B. 1523 is the result of animus. Doc. 30 at 35. But as explained earlier, H.B. 1523 is unprecedented among all of the RFRAs and other purported accommodation bills. While it is different in some respects from the Colorado constitutional amendment in *Romer,* H.B.1523 is similar in the sense that its extreme and unprecedented nature shows that is one of the "laws . . . [that] raise the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected." *Romer,* 517 U.S. at 634-635.

According to Defendants, H.B.1523 is different from the Colorado amendment in *Romer* because 1523 is not as broad. Doc. 30 at 40-41. Nevertheless, H.B. 1523 will, for example, preclude and repeal certain aspects of the City of Jackson's new anti-discrimination ordinance (§ 86-227 of Jackson, Mississippi Code of Ordinances, contained in Plaintiff's supplement to the motion for preliminary injunction, doc. 32-17). That ordinance protects the people of Jackson against discrimination based on a number of characteristics, including sexual orientation and gender identity, in a wide variety of contexts, including but not limited to employment, public accommodations, and housing. However, H.B. 1523 will, among other things, prohibit enforcement of the anti-housing discrimination provisions in the Jackson ordinance with respect to religious organizations who own property and rent it to the public but choose to exclude gay couples and transgender people (see Section 3(1)(c) of H.B. 1523), will prohibit enforcement of the public accommodations provisions with respect to the goods and services identified in

Section 3(5) of 1523, and will prohibit enforcement of the employment and public accommodations provisions with respect to "sex specific" standards regarding dress, grooming, and bathrooms identified in Section 3(6) of 1523.

The Defendants claim that the Jackson ordinance is "actually strikingly similar to H.B. 1523 in its recognition that religious beliefs and organizations must be protected as [it] exempts religious corporations, associations, and societies from the anti-discrimination ordinance." Doc. 30 at 41. But that is not quite accurate. The ordinance does not exempt religious organizations entirely, but only to the extent the organization "employs an individual of a particular religion to perform work connected with the performance of religious activities." See § 86-228(1).

Independent of the comparison between the breadth of the Colorado constitutional amendment in *Romer* and the breadth of H.B. 1523, the holding of *Romer* is applicable because H.B. 1523 precludes people in the targeted groups from obtaining the protection of the State in certain instances, thus "impos[ing] a special disability upon those persons alone," "forbid[ing them] the safeguards that others enjoy or may seek without constraint," and declaring that "it shall be more difficult for one group of citizens than for all others to seek aid from the government." 517 U.S. at 631, 633. It also precludes those who do not subscribe to the endorsed beliefs from sharing the legal safeguards granted to those who do, All of this is, as the Court explained in *Romer,* "itself a denial of equal protection of the laws in the most literal sense." *Id.* at 633.

## II. THE OTHER FACTORS WEIGH IN FAVOR OF A PRELIMINARY INJUNCTION.

The Defendants only argument about irreparable injury is that because no plaintiff has standing, none can have an irreparable injury. Doc. 30 at 41. But as discussed earlier, they do have standing.

According to the Defendants, the "conscientious objectors" will suffer harm. Doc. 30 at 42. But as mentioned previously, the Mississippi RFRA remains in place, as do the First Amendment and the free speech and religion clauses of the Mississippi Constitution.

Regarding the public interest, the harm from H.B. 1523 does not flow, as the Defendants suggest, from conjectural scenarios, but instead from the implementation of a law that violates the First and Fourteenth amendments. The public interest favors an injunction in order to prevent this constitutional violation. Moreover, as demonstrated by the supplement to our preliminary injunction motion, H.B. 1523 has and will continue to have an adverse economic impact in Mississippi, but that could be mitigated by an injunction.

## CONCLUSION

For the foregoing reasons, and on the basis of the authorities cited, the motion for a preliminary injunction should be granted.

June 21, 2016                                      Respectfully submitted,

                                                       s/Robert B. McDuff
                                                     ROBERT B. MCDUFF, MSB # 2532
SIBYL C. BYRD, MSB # 100601
JACOB W. HOWARD, MSB #103256
MCDUFF & BYRD
767 North Congress Street
Jackson, MS 39202
(601) 259-8484
rbm@mcdufflaw.com
scb@mcdufflaw.com
jake@mcdufflaw.com

REILLY MORSE, MSB # 3505
BETH L. ORLANSKY, MSB # 3938
JOHN JOPLING, MSB # 3316
CHARLES O. LEE, MSB #99416
MISSISSIPPI CENTER FOR JUSTICE
P.O. Box 1023
Jackson, MS 39205-1023
(601) 352-2269
borlansky@mscenterforjustice.org

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system, which sent notification to all counsel who have entered their appearance in this matter.

This the 21st day of June, 2016.

s/ Robert B. McDuff
ROBERT B. MCDUFF
